**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHUIBO ZHANG, individually and derivatively on behalf of nominal defendant JIUZI HOLDINGS INC.,<br><br>Plaintiff,<br><br>v.<br><br>TAO LI, HUIJIE GAO, YI ZHU, SHU LIU, WENGIAN GAO, XINPING LI, and JIUZI HOLDINGS INC. (nominal defendant),<br><br>Defendants. | Case No. 1:25-cv-09578<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff **Shuibo Zhang** ("Plaintiff' or "Zhang"), by his attorneys, McLaughlin & Stern, LLP, individually and derivatively, brings this action to redress a fraudulent scheme orchestrated by Defendants to obtain control of both the shareholding and the board of directors of **Jiuzi Holdings Inc.** ("Jiuzi" or "the Company").

2. Defendants, led by **Tao Li** and including **Huijie Gao, Yi Zhu, Shu Liu, Wenqian Gao, and Xinping Li** (hereafter together referred to as "Defendants") executed a plan that utilized fabricated investment transactions, forged board actions, falsified SEC filings, and unauthorized reverse stock splits to deprive Plaintiff of his majority ownership, governance authority, and economic interest in Jiuzi.

3. Defendants' conduct constitutes violations of the Securities Exchange Act of 1934, including Section 10(b) (15 U.S.C. § 78j(b)) and Rule 10b-5, as well as common-law fraud and breach of fiduciary duty.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 15 U.S.C. § 78aa, because the claims arise under the Securities Exchange Act of 1934 and related federal securities regulations. The Plaintiff also asserts related state law claims over which this Court has supplemental jurisdiction.

5. This Complaint further invokes the Court's jurisdiction under Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, as the wrongful acts alleged herein include the filing of false and misleading statements with the United States Securities and Exchange Commission ("SEC") and the unlawful use of interstate commerce facilities in furtherance of a fraudulent securities scheme.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 78aa because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendants purposefully directed their fraudulent conduct toward this District and the United States through repeated SEC filings, public announcements, and transactions routed through U.S.-based financial systems.

7. Defendants' fraudulent conduct, including the preparation and transmission of SEC filings and other U.S.-directed communications, constitutes substantial acts in furtherance of the scheme occurring within the United States and within this District.

8. Specifically, Defendants filed multiple Forms 6-K, 20-F, and F-3 Registration Statements with the SEC's EDGAR system, accessible nationwide, including in New York, and in connection therewith utilized U.S.-based corporate counsel, transfer agents, and auditors.

9. Moreover, since the initial fraudulent scheme, the Defendants, acting through the Company they now control, have continued to avail themselves of the United States, specifically

this District's jurisdiction, through its appointment of a United States citizen as its Chief Operating Officer in September of 2025[1].

10. This appointment was evidenced through an Employment Agreement[2] dated September 23, 2024, which identifies New York law as controlling and New York as the choice of forum. The Employment Agreement was filed by Defendants through the SEC's EDGAR system, further supporting the exercise of personal jurisdiction and venue in this Court.

11. This Court also has supplemental jurisdiction over Plaintiff's common-law fraud and breach of fiduciary duty claims pursuant to 28 U.S.C. § 1367(a), as those claims derive from a common nucleus of operative fact and are so related to the federal securities law claims asserted herein that they form part of the same case or controversy under Article III of the United States Constitution.

12. This Court has personal jurisdiction over Defendants because they engaged in acts within the United States, specifically New York, including filings with federal regulatory agencies and transactions, including but not limited to stock purchases and sales, utilizing U.S. banking and securities systems, and in doing so they caused foreseeable harm within this jurisdiction.

13. Plaintiff's injuries -- including his exclusion from corporate management, his loss of control of a NASDAQ-listed corporation, his reputational harm, and his economic losses resulting from false SEC disclosure -- were suffered in significant part due to Defendants' conduct within the United States.

---

[1] *See e.g.* the press release announcing the hiring of the U.S.-based CFO, https://www.tipranks.com/news/company-announcements/jiuzi-holdings-appoints-new-coo-to-strengthen-operations

[2] *See* SEC filing of Agreement: https://www.sec.gov/Archives/edgar/data/1816172/000121390025091710/ea025873801ex4-1_jiuzi.htm Section 10 identifies New York law as controlling and New York as the choice of forum.

14. Subsequent to the fraudulent scheme carried out by the Defendants, the Defendants have continued to utilize the SEC's electronic filing system and avail themselves of this Court's jurisdiction. As recently as September 29, 2025[3], Defendants filed a 424B5 Prospectus via the SEC's filing system, EDGAR, regarding an offering of up to 9,220,000 ordinary shares and hired a New York based placement agent to solicit offers within the United States. Within the prospectus the Defendants note that they are a "Cayman Islands holding company conducting our operations through our subsidiaries in China and U.S.[4]"

15. On October 8, 2025, Defendants caused the Company to announce a phased rollout of a $1 Billion Cryptocurrency Acquisition Plan[5]. Defendant Li stated that the Company was "encouraged by the strong support this plan has received from investors with diverse backgrounds." The Company will be required to file updates regarding this phaseout plan with the SEC (via EDGAR) and are widening the scope of investors, including investors in the United States, who are investing in a Company that Defendants currently control by their fraudulent, concealed, acts.

16. By continuously filing reports and conducting transactions through the SEC's electronic systems, Defendants availed and are availing themselves of the privilege of conducting business in the United States, specifically in this District, and thereby have established sufficient contacts with this forum to satisfy due process requirements.

---

[3] Announcement: https://www.tipranks.com/news/company-announcements/jiuzi-holdings-secures-5-5-million-in-direct-offering-and-private-placement

[4] SEC FILING: https://www.sec.gov/Archives/edgar/data/1816172/000121390025093980/ea0259496-424b5_jiuzihold.htm

[5] Article: https://www.prnewswire.com/news-releases/jiuzi-holdings-inc-announces-phased-rollout-of-1-billion-cryptocurrency-acquisition-plan-first-bitcoin-purchase-to-be-completed-within-two-weeks-302578119.html

17. Venue is therefore proper in the District of Columbia, or alternatively in the Southern District of New York, both of which maintain a substantial nexus to the acts alleged herein.

**PARTIES**

18. **Plaintiff Shuibo Zhang** is the former (but rightful present) Chief Executive Officer ("CEO"), and the former (but rightful present) Chairman of Jiuzi Holdings Inc.

19. **Defendant Jiuzi Holdings Inc.** is a corporation organized under the laws of the Cayman Islands, with operational offices in the People's Republic of China. Its securities are publicly traded in the United States on NASDAQ.

20. **Defendants Tao Li, Huijie Gao, Yi Zhu, Shu Liu, Wenqian Gao, and Xinping Li** are individuals and entities who, acting in concert, orchestrated, executed, and benefited from the fraudulent investment and the subsequent change-of-control transactions alleged herein. Acting through a network of affiliated entities and nominees, these Defendants conspired to misappropriate Plaintiff Zhang's controlling shareholding and board authority under the false pretense of a $50 million capital infusion into Jiuzi Holdings Inc.

21. Defendants Huijie Gao, Yi Zhu, Shu Liu, Wenqian Gao, and Xinping Li (together the "Defendants") are individuals who, during the relevant period, purportedly served as officers or directors of Jiuzi and participated in or knowingly facilitated the fraudulent conduct alleged herein.

22. Non-party actors who worked with the Defendants to execute the fraudulent scheme include Wenbo Li and Yunfeng Zhang, both of whom were directly involved in structuring the sham investment transactions. They held overlapping roles in various shell entities through which the purported RMB 355 million (≈$50 million) (hereafter "$50 million")

investment was cycled (including but not limited to Beijing Duoxi Trading Co., Ltd. ("Duoxi") and Beijing Yunguangtong Trading Co., Ltd.).

## FACTUAL BACKGROUND

### A. The Fraudulent Investment Scheme

23. In or about early 2023, Defendants devised a plan to acquire control of Jiuzi by engineering a purported $50 million "investment" that appeared to be a capital infusion into the Company, but was, in reality, the first step toward Defendants improperly obtaining majority control of the Company's stock.

24. The transaction was structured to appear as legitimate financing but was, in fact, a pre-arranged circular movement of funds designed to dilute Zhang's ownership and fraudulently obtain corporate control.

25. On December 18, 2023, Duoxi, an entity affiliated with Defendant Wenbo Li, paid approximately $50 million to **Shenzhen Jiuzi New Energy Holding Group Co., Ltd.**, ("Shenzhen Jiuzi") purportedly representing a true equity investment in Shenzhen Jiuzi to be used to pursue Shenzhen Juizi's business objectives. The transfer of funds  was executed through Ping An Bank on behalf of twenty purported independent 'investors,' but all remittances originated from Duoxi itself, not from any independent investors.

26. Duoxi falsely represented to Plaintiff and Shenzhen Jiuzi that the $50 million represented funds that had been supplied to Duoxi by twenty independent individual "investors".

27. Immediately prior to the purported "investment", between December 11, 2023 and December 17, 2023—just days before the Duoxi transfer—Shenzhen Jiuzi entered into four sham 'procurement contracts' (or "purchase agreements") totaling $50  million, precisely mirroring the supposed $50 million investment.  Specifically, Shenzhen Jiuzi executed four "purchase agreements" with Beijing Yunguangtong Trading Co., Ltd. ("Yunguangtong");

Beijing Jinyi Changhong Technology Co., Ltd. ("Jinyi Changhong"); Beijing Yaneryouxin Technology Co., Ltd. ("Yaneryouxin"); and Beidong Shengqi Technology Co., Ltd. ("Beidong Shengqi" and together with Yunguangtong, Jinyi Changhong and Yaneryouxin, the "Beijing Shells"), committing to make payments to the Beijing Shells totaling $50 million, the same amount Duoxi purportedly invested in Shenzhen Jiuzi.

28. Each of the Beijing Shells shared overlapping shareholders and management, including Wenbo Li and Yunfeng Zhang, and three of the Beijing Shells listed the same registered address at No. 111–223/230 Pinggu Town, Yingbin Garden Building 3, 1–3/F, Pinggu District, Beijing and three of the Beijing Shells also shared another registered address at No. 111–223/230 Pinggu Town, Yingbin Garden Building 3, Pinggu District, Beijing, confirming that they were affiliated shell entities under unified control.

29. The supplier of the funds, Duoxi, was also controlled by the same individuals. Wenbo Li held equity interests in both Duoxi and two of the recipient entities (Yunguangtong and Jinyi Changhong). In addition, Yunfeng Zhang served as the legal representative of two of the entities and held an 80% ownership stake in Beidong Shengqi.

30. These overlapping positions, shared addresses, and common ownership and corporate officers indicate that the four Beijing Shells that collectively received the $50 million were affiliated shell companies under unified control, created by the Defendants to facilitate the circulation and concealment of the $50 million transfer.

31. On February 1, 2024, Plaintiff, at that time still the Chairman of the Company, received a formal warning email from then-CFO Francis Zhang stating that the Registration Statement dated January 24, 2024 (the "January 24, 2024 Registration Statement") concerning the $50 million Duoxi transaction violated the People's Republic of China ("PRC") foreign-

exchange and securities laws because there was never any filing with the State Administration of Foreign Exchange ("SAFE"),despite the regulations requiring those filings, and noting that the proceeds had been diverted to Shenzhen Jiuzi rather than the listed entity. This correspondence also expressly cautioned the Board that failure to take corrective action could result in criminal and regulatory exposure for both the Company and its senior officers.

32. During the period from April 2024 to July 2024, at Defendants' direction, three of the four Beijing Shells were deregistered under China's simplified procedure, rendering them incapable of performing any contractual obligations and eliminating any trace of the funds transferred, further confirming that the Beijing Shells were created for fraudulent purposes.

33. The Company's own SEC filings later confirmed the misappropriation; Form 6-K filed September 9, 2024 reported prepaid expenses of US$50,554,537 as of April 30, 2024—matching the $50 million in the sham contracts and demonstrating that the funds were never recovered. The supposed "investment" funds were not retained by the Company, nor did they generate any tangible corporate benefit. Instead, they were recycled through Defendants' controlled network of entities to create the false appearance of capital inflow, a fabricated narrative that Defendants later used to justify the issuance of new shares and the installation of their own board nominees.

34. Defendants ignored repeated internal warnings and continued to conceal these transfers while making public statements that the $50 million remained part of the Company's working capital.

35. Plaintiff, then in his role as Chairman and Director of the Board, was not informed of the true nature of these transactions, received no notice of any meeting or board

approval, and did not sign or authorize any related documents. Rather, Defendants deliberately kept him in the dark.

36. The sham financing was a mechanism designed to mislead regulators and investors, providing a pretext for the ensuing corporate takeover described below. Through this circular financing, Defendants not only misled investors but also continued to avail themselves of U.S. capital markets by issuing additional securities based on falsified reports of the two $50 million transactions.

**B. The Board Takeover Fraud**

37. Concurrently with the fraudulent investment scheme described above, and as part of the means to execute it, the Defendants embarked upon a carefully crafted plan to unlawfully restructure and seize control of the Company's board of directors. This internal coup was executed systematically between April 2023 and August 2025, under the false pretense of accommodating "new investors" tied to the fabricated $50 million "financing". Defendants' plan was coordinated between the PRC-based management team and U.S. representatives.

38. Defendants represented to Plaintiff that additional board and management changes were necessary to "accommodate new investors" associated with the incoming $50 million financing and to "strengthen compliance for future SEC offerings." These representations were false and intentionally misleading.

39. As set forth below, relying on these statements and continuing to act in good faith and in accordance what he believed was the Company's best interests, Plaintiff did not object to the temporary appointments, believing that the restructuring was procedural and beneficial to the Company's future growth.

40. In April 2023, Plaintiff, based on Defendant Li's false representations, made to Plaintiff directly and indirectly, believed that the Company's listing compliance and new capital raising efforts required visible management presence in China. Defendant Li represented to Plaintiff that a "visible management presence in China" was required for compliance with PRC capital-control procedures and to facilitate future F-3 shelf offerings and convinced Plaintiff that his U.S. residence prevented him from efficiently signing required filings. These representations were false and pretextual, made solely to induce Plaintiff's temporary resignation. Defendant Li also falsely stated this transition was explicitly understood to be temporary and for administrative convenience only. Plaintiff, therefore, at Defendant Li's request, stepped down as CEO (but retained his position as Chairman of the Board), to permit Defendant Li to take that position.

41. Plaintiff relied on Defendant Li's false representations. Without them, Plaintiff never would have relinquished his position. He believed, based on Defendant Li's fraudulent misrepresentations, that he was acting in the Company's best interests.

42. Immediately following Plaintiff's resignation as CEO, Defendant Li became the new CEO. Within weeks, Defendant Li began to reconstitute the board of directors. Two independent directors, Richard Chen and Junjun Ge, were replaced by Defendant Li's own associates, Yi Zhu and Zhenhao Qiu, both of whom had personal or professional ties to Defendant Li and no prior relationship with the Company. From that point onward, all substantive corporate decisions—including share issuances, auditor appointments, and SEC submissions—were orchestrated solely by Defendants and their associates without Plaintiff's involvement.

43. By April 21, 2023, the newly configured board consisted of five members: Plaintiff (Chairman), Defendant Li (CEO and Director), and three other directors, two of whom—Yi Zhu and Qiu Zhenhao—were Defendant Li's appointees. This composition gave Defendant Li effectively a 3–2 majority and control of the board, which he and the other Defendants used to unilaterally authorize corporate actions, including subsequent share issuances and multiple SEC filings, without Plaintiff's knowledge or consent.

44. Articles 27 and 28 of the Company's Articles of Association expressly regulate the appointment and removal of directors, requiring strict compliance with procedural safeguards such as proper notice, quorum, and shareholder approval. Defendants' actions were taken in violation of these provisions and are ultra vires, null, and void.

45. Beginning in mid-2023, after the $50 million financing had been publicly announced, Plaintiff repeatedly requested access to board meeting minutes, investor subscription documents, and bank transaction records, for the purported Duoxi $50 million investment. Plaintiff also sent written requests through the Company's internal system and by direct email, which were ignored or blocked by Li's staff, who claimed that all financial records were "under review by PRC counsel" and therefore unavailable for inspection, despite Plaintiff's then role as Chairman of the Board.

46. By mid-2024, Plaintiff discovered that the alleged $50 million investment had in fact been transferred out of the Company's accounts and distributed through the network of Beijing Shells. Upon making this discovery, Plaintiff was concerned that Defendant Li and the other Defendants had deceived him. When Zhang confronted Defendant Li about the missing funds, Defendant Li responded that the funds had been "temporarily allocated" to Shenzhen Jiuzi

for local business expansion—an explanation later revealed to have been false. In fact, the involved entities were deregistered and the funds were transferred out of Shenzhen Jiuzi.

47. Plaintiff ceased signing all corporate documents, terminated internal access privileges for suspicious accounts under his authority, and demanded full disclosure of financial records.

48. Defendants responded by systematically excluding Plaintiff from all aspects of corporate governance. He was removed from internal email communications, denied access to company files, and not notified of any subsequent board or shareholder meetings. Defendants continued to make regular filings (without the signature or approval of Plaintiff) through 2024 and 2025, each submitted from the United States via the Company's EDGAR account, furthering the Company's fraudulent conduct and adversely impacting investors, shareholders, and potential shareholders.

49. Despite Plaintiff's explicit objections and efforts to regain control of the board and the Company, Defendants continued to issue and file SEC documents in the Company's name, falsely representing that all board and shareholder approvals had been obtained for various financings and structural changes. These filings included Form 6-K, Form 20-F, F-3 registration statements, and other reports—all executed under Defendant Li's purported authority and direction and without Plaintiff's review or consent.

50. Among these filings were fraudulent certifications under Sarbanes-Oxley Act (18 U.S.C. §§ 1350(a) and (b)), Sections 302 and 906), falsely attesting that corporate disclosures were accurate and that the Company maintained effective internal controls, despite the fact that Plaintiff had been unlawfully excluded from all oversight. Such certifications were made in violation of Sections 302 and 906, which require accurate disclosure and officer accountability.

51. In October 2024, Defendants Li and (and purported CFO) Huijie Gao, executed the unauthorized sale of Jiuzi (Hong Kong) Limited, a wholly owned subsidiary of Jiuzi Holdings Inc., for $1,000,000. Plaintiff was neither consulted nor informed. As far as Plaintiff has been able to determine, no board meeting was convened, no valuation conducted, and no shareholder consent was obtained for the sale of this material asset.

52. The terms of that sale were never disclosed to Plaintiff (the then-Chairman of the Board), nor were the proceeds reported accurately in the Company's financial statements. The transaction was concealed through false accounting entries and selective reporting in subsequent SEC filings.

53. Following the Hong Kong subsidiary sale, Defendants accelerated their efforts to finalize the corporate takeover. Despite Plaintiff's explicit objections and repeated efforts to regain control of the Board and the Company, Defendants continued to issue and file SEC documents in the Company's name, falsely representing that all requisite board and shareholder approvals had been obtained for various financings and structural changes, even though no shareholder resolution or written consent authorizing such actions ever existed, as required by the Company's Articles of Association (the "Fraudulent Board Action Documents").

54. The Fraudulent Board Action Documents were made under false pretenses and without Plaintiff's knowledge or consent (see, e.g., Form 6-K, Oct. 17 2024, reporting a private placement executed under Tao Li's signature; Form 6-K, Feb. 20 2025, furnishing the EGM Notice and proposed Fifth Amended & Restated M&AA (Ex. 3.1); Form 6-K, Mar. 27 2025, adopting the Fifth Amended & Restated M&AA; and Form 20-F/A, Mar. 2025, listing Shuibo Zhang as Chairman and Director. The Fraudulent Board Action Documents were filed through the SEC's EDGAR system.

55. However, a review of Edgar filings reveals that the Company **never** filed any documentation reflecting a shareholder vote or any form of authorized removal of Plaintiff with the SEC (or NASDAQ), despite the requirement to do so in the Company's Articles of Association).

56. On or about August 28, 2025, Defendants filed a Form 6-K with the SEC falsely stating that Plaintiff Shuibo Zhang had resigned as Chairman and Director of the Board (the "August 28, 2025 Filing"). Plaintiff never tendered any resignation, orally or in writing, nor did he consent to any change in his board position. In fact, no one ever asked him to resign or even raised the issue. Plaintiff immediately notified Defendant Li and the Company that no such resignation had been tendered—both verbally and through contemporaneous "WeChat" and email messages—which Defendants ignored.

57. In the August 28, 2025 Filing, Defendants announced that Defendant Li had been appointed Chairman of the Board, thereby consolidating both executive and board control in his hands. The August 28, 2025 Filing marked the culmination of the fraudulent board takeover. On February 1, 2024, then-CFO Francis Zhang had already warned that the January 24, 2024 Registration Statement filed with the SEC could expose the Company and its officers to criminal liability; Defendants nevertheless proceeded to continue to make false filings, including the August 28, 2025 Filing announcing Zhang's purported resignation.

58. In truth, no shareholder meetings were convened, no board resolutions were circulated, and no written consents were obtained as required by Articles 28, 29 and of the Company's Articles of Association. Collectively, these provisions explicitly mandate unanimous consent and written notice for any director's appointment, removal, or resignation. Defendants' failure to comply with these provisions rendered all subsequent actions ultra vires and void.

59. Plaintiff, upon learning that Defendants were falsely stating that he had resigned as Chairman and Director of the Board, immediately objected through counsel, formally notifying Defendants and the SEC that his purported resignation was fraudulent and that he continued to serve as the lawful Chairman (the "Demand Letter"). Despite such objections, Defendants continued to act and represent to regulators and investors that the change of control had been duly authorized.

60. This deliberate misrepresentation triggered further communications between Plaintiff's counsel and the Company, culminating in the formal demand letter described below.

61. Through this sequence of misrepresentations, omissions, and procedural violations, Defendants effectively stripped Plaintiff of his governance authority, commandeered the Company's reporting functions, and concealed from shareholders, NASDAQ, and the SEC that the fraudulent "investment" was circular.

62. Plaintiff's PRC counsel, Zhejiang Cheng Ru Law Firm, issued a formal demand letter to Jiuzi Holdings Inc. and Defendant Tao Li, demanding immediate correction of false public statements, reinstatement of Plaintiff's positions, and cessation of further rights violations. Defendants ignored this letter, further confirming their bad faith.

63. These acts, executed in tandem with the sham $50 million financing, were integral to Defendants' overarching scheme to seize full control of Jiuzi Holdings Inc., fraudulently disenfranchise its founder, and misuse its public listing for their personal enrichment.

**C. Dilution of Plaintiff's Shareholding**

64. As part of Defendants' fraudulent scheme, they systematically diluted Plaintiff's percentage of shareholder interest in the Company. This dilution was not a byproduct of capital-

raising but a calculated mechanism to eliminate Zhang's voting control and reinforce Li's unlawful takeover.

65. When Jiuzi Holdings Inc. went public on May 18, 2021, Plaintiff held approximately 59.63% of the Company's outstanding ordinary shares, making him the controlling shareholder and enabling him to direct both management and board decisions. At that time, the Company had 36.0263 million issued shares, of which Plaintiff owned 21.5 million shares through direct and beneficial holdings. The Company's SEC filings from 2021 through 2023 uniformly identified Plaintiff as "Chairman and CEO," confirming his controlling position.

66. Following Jiuzi's listing, the Company issued additional shares in limited offerings, including small private placements and debt conversions, none of which materially affected Plaintiff's majority position until 2023. These transactions were duly reported in Form 6-K and Form 20-F filings, all of which listed Plaintiff as the principal executive officer.

67. On March 15, 2023, after certain debt-to-equity conversions and the issuance of new shares to institutional creditors, all based on fraudulent representations made to Plaintiff by Defendants and directed by Defendants, Plaintiff's holdings decreased to 11.925 million shares, representing 33.10% of the Company's total 36.0263 million outstanding shares. Plaintiff, however, continued to exercise majority board control and remained Chairman. Defendant Li repeatedly assured Plaintiff that these adjustments were temporary and "necessary to maintain listing stability," an assurance later revealed to be false.

68. On May 26, 2023, Defendants implemented a 1-for-20 reverse stock split ostensibly to maintain NASDAQ listing compliance. This corporate action, approved without Plaintiff's authorization, occurred roughly a month after Defendant Li had obtained control of the Board, reduced the total share count to approximately 1.8 million post-split, and decreased

Plaintiff's holdings to 662,500 shares, representing 25.63% of the post-split total. No minutes or resolutions approving this reverse split were ever circulated to Plaintiff.

69. Just weeks later, on July 20, 2023, Defendant Li's board conducted a registered offering of 1,395,151 shares at $1.65 per share, raising roughly $2.3 million. The offering immediately diluted Plaintiff's holdings to 16.65%, even though no valid board or shareholder vote had been held to authorize the issuance. The offering materials filed with the SEC falsely represented unanimous board approval, as Plaintiff never approved the offering.

70. On October 20, 2023, Defendants caused Jiuzi to announce a "$50 million offering" consisting of 113,636,360 units, each comprising one ordinary share and one warrant to purchase three additional shares at $1.10 per share. The transaction, part of the fraudulent financing described in Section A above, inflated the nominal share count while transferring control to undisclosed entities affiliated with Defendant Li's network. This "private placement" was later referenced in multiple Form 6-K filings from October 2023 through March 2025. In short, Defendants were misleading investors, shareholders and prospective shareholders both in the United States and abroad through their repeated false filings with the SEC.

71. Between October 2023 and April 2024, Defendants filed SEC forms claiming the offering was fully subscribed and that funds had been received; in truth, while the $50 million "investment" underlying the transaction had been received it had already been siphoned out of the Company by Defendants through the circular transfer scheme described above. The filings created the false impression of legitimate capital formation, purportedly justifying massive share issuance that further diluted Plaintiff's stake. Defendants' conduct misled U.S. investors and regulators by falsely depicting Duoxi's funds as bona-fide capital inflows.

72. On June 28, 2024, Defendants executed a second reverse stock split at a ratio of 1-for-13, purportedly to "stabilize the stock price" and maintain listing eligibility. The action reduced Jiuzi's outstanding shares to approximately 10.4 million and diminished Plaintiff's holdings to 51,000 shares, representing only 0.49% of the total. No disclosure or vote was recorded; filings submitted from the United States again bore Defendant Li's digital signature on EDGAR.

73. Even after this extreme dilution, Defendants continued to conduct additional share issuances. On October 17, 2024, they approved another offering of 500,000 shares at $0.72 per share, raising $360,000, again without notifying or obtaining consent from Plaintiff.

74. On or about and between September 29, 2025 through September 30, 2025, Jiuzi issued 9,220,000 new shares at a price of $0.00039 per share, raising approximately $5.53 million before expenses. After this issuance, Jiuzi had 20.2314 million outstanding shares, leaving Plaintiff's with 51,000 shares representing just 0.25% ownership—erasing his control and economic interest almost entirely.

75. These 2025 issuances were carried out while Plaintiff's Demand Letter remained unanswered, highlighting Defendants' cavalier disregard for the consequences of their fraudulent acts, despite explicit notice of their violations provided in the Demand Letter from Plaintiff's PRC counsel.

76. Each of these transactions was accompanied by false and misleading SEC filings prepared by Defendants and signed by Defendant Li, which asserted that the issuances were duly authorized, and that Plaintiff had resigned or consented. No such resignation occurred nor was any authorization ever given. The filings constitute material misrepresentations under

Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 and demonstrate Defendants' ongoing use of U.S. interstate commerce facilities.

77. The cumulative effect of these actions by Defendants was the progressive and intentional dilution of Plaintiff's equity from 59.6% in 2021 to less than 0.25% by September 2025, accomplished through undisclosed stock issuances, falsified filings, and sham capital events. Each event was part of Defendants' continuing fraudulent course of conduct designed to solidify Li's control while maintaining the appearance of legitimacy.

78. These manipulative transactions violated federal securities laws and the Company's Articles of Association, deprived Plaintiff of his lawful ownership and voting rights, and led to the Defendants' unlawful seizure of corporate control of the company.[6]

**CAUSES OF ACTION – COUNT I**

**Violation of Section 10(b) and Rule 10b-5 (15 U.S.C. § 78j(b))**
**Brought Individually and Derivatively**

79. Plaintiff repeats and realleges paragraphs the allegations previously set forth in this pleading as though fully set forth herein.

80. At all relevant times, Defendants Tao Li, Huijie Gao, Yi Zhu, Shu Liu, Wenqian Gao, and Xinping Li, acting individually and collectively, directly and indirectly, by means and instrumentalities of interstate commerce and the mails, employed devices, schemes, and artifices to defraud, made untrue statements of material fact, and omitted material facts necessary to make the statements made not misleading in connection with the purchase and sale of securities of Jiuzi Holdings Inc., in violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. §78j(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

[6] As a direct result, Plaintiff suffered irreparable harm to his financial interests and reputation, satisfying the irreparable-injury element for injunctive relief as further pleaded in the TRO.

81. Specifically, Defendants:

a. Falsely represented that Jiuzi had received a legitimate $50 million investment from independent investors when, in truth, the investment was part of circular fund transfers among shell entities they controlled that netted the Company nothing;

b. Filed false SEC reports (including Forms 6-K, 20-F, and F-3) asserting that corporate actions had been duly authorized and that Plaintiff had consented to them;

c. Misrepresented and/or concealed the unauthorized sale of Jiuzi (Hong Kong) Limited and the resulting diversion of corporate assets;

d. Misrepresented and/or concealed the existence of board takeovers, forged resolutions, and false resignations purporting to remove Plaintiff as Chairman and Director; and

e. Misstated or omitted the true purpose and effect of multiple reverse stock splits and share issuances which were designed to dilute and did dilute Plaintiff's holdings and transfer control to Defendants.

82. Each of these statements and omissions was material, as a reasonable investor would consider them important in making investment and voting decisions regarding Jiuzi securities.

83. Defendants acted knowingly, intentionally, and with scienter, in that they engaged in deliberate deception, concealed adverse information from NASDAQ, the SEC, shareholders, and the investing public, and falsified corporate records for personal gain.

84. Plaintiff reasonably relied on Defendants' misrepresentations and omissions, both in his capacity as a controlling shareholder and as a member of Jiuzi's board. He believed that the Company's filings and financing activities executed by Defendants were conducted lawfully and in good faith.

85. As a direct and proximate result of Defendants' violations of Section 10(b) and Rule 10b-5, Plaintiff suffered substantial damages, including:

- Loss of his controlling ownership interest (from 59.6% to 0.25%);
- Loss of his governance position and directorship; and
- Severe diminution in the market value of his Jiuzi shares and destruction of his reputation as the Company's founder.

86. Defendants' fraudulent conduct was part of a continuing course of deceptive practices intended to mislead regulators, investors, Plaintiff, and the Company, and constitutes a pattern of securities fraud under 15 U.S.C. §78j(b).

87. Plaintiff, on behalf of himself and the Company, therefore, seeks rescission of the fraudulent transactions, compensatory damages, punitive damages, and equitable relief as set forth in the Prayer for Relief below.

**COUNT II – Common-Law Fraud**

**Brought Individually and Derivatively**

88. Plaintiff repeats and realleges paragraphs the allegations previously set forth in this pleading as though fully set forth herein.

89. Under the common law of the State of New York, a cause of action for fraud requires: (a) a material misrepresentation or omission of fact, (b) made with knowledge of its

falsity, (c) intent to induce reliance, (d) justifiable reliance by the plaintiff, and (e) damages proximately caused thereby.

90. Defendants knowingly and intentionally made false representations and omissions of material fact to Plaintiff, investors, and the investing public, both orally and through corporate communications and public filings, for the purpose of inducing Plaintiff to act—or refrain from acting—in a manner that would and did enable them to seize control of Jiuzi Holdings Inc.

91. These false representations and omissions by Defendants included, but were not limited to:

a. Representing that the $50 million "investment" was genuine and funded by twenty legitimate outside investors, when Defendants knew it was part of a sham circular transfer among their own shell entities.

b. Stating that additional board appointments (and therefore resignations) as well as related governance changes were required to satisfy new investors, when Defendants' true intent was to replace Plaintiff's allies with Li's allies and secure board majority control;

c. Misrepresenting that the reverse stock splits and new share issuances were necessary for NASDAQ compliance and capital expansion, when they were in fact designed to dilute Plaintiff's ownership;

d. Concealing the unauthorized sale of Jiuzi (Hong Kong) Limited and misreporting the use of its proceeds; and

e. Falsely claiming, in public filings, that Plaintiff had resigned as Chairman and Director, thereby misleading investors and regulators as to the Company's lawful governance.

92. Defendants made each of these misrepresentations and omissions with knowledge of their falsity and with the intent to induce Plaintiff's reliance. They sought to create an illusion of legitimate management and investor participation so that Plaintiff would not challenge or expose their fraudulent acts.

93. Plaintiff justifiably relied upon Defendants' statements and omissions in continuing to cooperate with the Company's operations, refraining from immediate legal action, and believing that corporate decisions were being made by Defendants in good faith and in compliance with law.

94. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff suffered severe and quantifiable damages, including:

a. The loss of his controlling ownership interest in Jiuzi Holdings Inc.;

b. The loss of his board position and governance rights;

c. The dilution of his equity from 59.6% to less than 0.25%; and

d. Substantial financial, reputational, and emotional harm as the founder and Chairman of the Company.

95. Defendants' conduct was willful, malicious, and undertaken in bad faith, warranting an award of punitive damages to deter similar misconduct.

**COUNT III – Breach of Fiduciary Duty**

**Brought Individually and Derivatively**

96. Plaintiff repeats and realleges paragraphs the allegations previously set forth in this pleading as though fully set forth herein.

97. At all relevant times, Defendants Tao Li, Huijie Gao, Yi Zhu, Shu Liu, Wenqian Gao, and Xinping Li, as directors, officers, and controlling shareholders of Jiuzi Holdings Inc.,

owed fiduciary duties of loyalty, good faith, fair dealing, and full disclosure to both the Company and its majority shareholder, Plaintiff Shuibo Zhang.

98. These fiduciary duties required Defendants to act in the best interests of the Company and its shareholders, to avoid self-dealing, to provide complete and truthful information regarding material corporate actions, and to refrain from using corporate authority for personal gain or to the detriment of Plaintiff.

99. Defendants breached their fiduciary duties by engaging in self-interested transactions, concealing material information, and usurping corporate control for their own benefit. Their misconduct included:

a. Misusing Company accounts to circulate the fraudulent $50 million “investment”;

b. Executing unauthorized board and shareholder actions without notice or consent;

c. Diverting corporate assets, including but not limited to the sale proceeds from the sale of Jiuzi (Hong Kong) Limited; and

d. Filing false corporate documents with regulators to solidify their control and mislead investors.

100. Defendants’ conduct was not undertaken in the honest exercise of business judgment but was instead driven by personal and financial motives inconsistent with their fiduciary obligations to Plaintiff and the Company.

101. As a direct and foreseeable consequence of Defendants’ breaches, Plaintiff suffered the loss of his ownership control, board authority, and the economic value of his shares. The Company itself was damaged through reputational harm, regulatory risk, and depletion of its assets.

102. Defendants' breaches were willful and malicious, constituting bad faith and gross abuse of trust, entitling Plaintiff, the Company, and its investors prior to Li's and the other Defendants'' fraudulent takeover, to both compensatory and punitive damages, as well as equitable relief including, but not limited to, rescission and restoration of Plaintiff's rights as controlling shareholder.

**DEMAND FUTILITY**

103. Under the circumstances, as set forth in detail above, it would be clearly futile for Plaintiff to demand that Jiuzi, under the control of Defendants, commence and prosecute the derivative claims asserted in this action, because those Defendants are themselves the principal wrongdoers. In addition, for many months, Plaintiff has been unable to communicate with Defendants. They have ignored him.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff **Shuibo Zhang**, on behalf of himself and derivatively on behalf of the Company, respectfully requests that this Court enter judgment in his and the Company's favor and against all Defendants, jointly and severally, and grant the following relief:

a. **Declaratory Relief**: Declare that the purported $50 million investment, together with all related share issuances, reverse stock splits, and corporate actions executed in furtherance thereof, were fraudulent, unauthorized, and void ab initio; further declare that all SEC filings, Form 6-Ks, Form 20-Fs, and other submissions executed or caused to be filed by Defendants in furtherance of this scheme were materially false and misleading, in violation of the Securities Exchange Act of 1934, and that any certifications made under Sections 302 and 906 of the Sarbanes–Oxley Act are null and without legal effect.

b. **Restoration of Ownership and Governance**: Order the rescission, nullification, and unwinding of all transactions, corporate actions, and SEC filings effectuated by Defendants after April 2023, including but not limited to those related to the purported $50 million investment, the unauthorized appointment or removal of directors, and any filings made under false pretenses; further order that Plaintiff be reinstated immediately to his rightful position as Chairman and Director of Jiuzi Holdings Inc., and that all corporate records, communications, and filings be corrected to reflect his lawful position; direct Defendants to restore Plaintiff's and the Company's shareholders' legitimate ownership and voting rights, and to ensure that all future board and shareholder actions comply with the Company's Articles of Association and applicable securities laws.

c. **Damages**: Plaintiff requests on behalf of himself, only, that the Court award compensatory damages to Plaintiff in an amount to be proven at trial, representing the value of his lost equity, control, and related financial harm, together with punitive damages to deter similar fraudulent conduct; Plaintiff also requests on behalf of the Company, that the Court award compensatory damages to the Company in an amount to be proven at trial, representing the value of the harm Defendants caused to the Company, together with punitive damages to deter similar fraudulent conduct;

d. **Injunctive Relief**: Issue a permanent injunction restraining Defendants, their agents, and affiliates from further transferring, encumbering, or dissipating Jiuzi's assets or shares, and from making any additional filings with the U.S. Securities and Exchange Commission purporting to represent the Company's governance without Plaintiff's written consent and from taking any further actions that could dissipate, conceal, or transfer the Company's property or assets in violation of their fiduciary obligations or Court orders.;

e. **Accounting and Constructive Trust**: Order a full forensic accounting of all funds, shares, and corporate assets misappropriated by Defendants, and impose a constructive trust over any property or proceeds derived from the fraudulent acts alleged herein; and

f. **Attorneys' Fees.** Award Plaintiff reasonable attorneys' fees, expert costs, investigative expenses, and litigation costs pursuant to applicable law, including those incurred in uncovering and documenting Defendants' fraud and in bringing this derivative and individual action.

g. **Further Relief**: Grant such other and further relief to both Plaintiff and the Company as this Court deems just, equitable, and proper under the circumstances, including declaratory or injunctive orders necessary to preserve the Company's assets, prevent further harm to U.S. investors, and ensure compliance with federal securities regulations.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**Dated:** November 17, 2025

Respectfully submitted,

By: s/s Andrew E. Tomback
McLAUGHLIN & STERN, LLP

Andrew E. Tomback, Partner
260 Madison Avenue
New York, NY 10016
917-301-1285

Daniel T. Quinn, of Counsel
260 Madison Avenue
New York, NY 10016
718-308-6524
*Pro hac vice pending*

*Counsel for Plaintiff Shuibo Zhang*