**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHUIBO ZHANG, individually and derivatively on behalf of nominal defendant JIUZI HOLDINGS INC.,<br><br>Plaintiff,<br><br>v.<br><br>TAO LI, HUIJIE GAO, YI ZHU, SHU LIU, WENGIAN GAO, XINPING LI, and JIUZI HOLDINGS INC. (nominal defendant),<br><br>Defendants. | Case No. 1:25-cv-09578<br><br>**PLAINTIFF'S SUPPORTING DECLARATION** |

I, **Shuibo Zhang**, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the former and rightful Chairman of Jiuzi Holdings Inc. ("Jiuzi" or the "Company") and its former and rightful current Chief Executive Officer. I submit this declaration in support of the Complaint dated November 17, 2025, and in support of a forthcoming motion for a Temporary Restraining Order and Preliminary Injunction, which I understand my counsel will file immediately after a judge is assigned to this matter.
2. Up until April of 2023, I had held the positions of Chief Executive Officer ("CEO") and Chairman of the Board ("Chairman") of the Company.
3. In April of 2023, while in my role as CEO, I was approached by Defendant Li. Defendant Li represented to me that he believed that the Company's listing compliance and new capital raising efforts required more visible management presence in China. Defendant Li told me that a "more visible management presence in China" was required for compliance with the People's Republic of China's ("PRC) capital-control procedures

and to facilitate future F-3 shelf offerings. Defendant Li represented that the transition would be temporary and for administrative convenience only.

4. At the time, I was a United States of America ("U.S.") resident and I trusted Defendant Li's statements and therefore believed that my U.S. residency would prevent me from being a sufficiently visible presence in China and also make it difficult for me to efficiently sign required filings and handle other administrative duties.

5. As a result of Defendant Li's representations and relying on Defendant Li's representation that this change would only be temporary and was in the best interests of maintaining the Company's compliance with PRC capital-control procedures, I agreed to step down as CEO, but I retained my position as Chairman. Without these representations, I would not have relinquished my position as CEO. Following this false representation, Defendant Li then took the position of CEO. To date, there has been no discussion regarding me retaining my role as CEO, but rather Defendants have systematically removed me from any aspect of corporate governance, as further discussed below.

6. On December 18, 2023, Defendants procured an investment from Beijing Duoxi Trading Co., Ltd ("Duoxi"), an entity affiliated with Defendant Wenbo Li, whereby there would be a $50 million investment into Shenzhen Jiuzi New Energy Holding Group Co., Ltd. ("Shenzhen Jiuzi"), a subsidiary of the Company. Defendant represented to me that this $50 million investment had been supplied to Duoxi by twenty independent individual investors. I later learned this representation to be false.

7. I discovered after the fact that, just days earlier—between December 11 and December 17, 2023—Shenzhen Jiuzi had entered into four "procurement contracts" or "purchase

agreements" totaling the same RMB 355 million amount with Beijing Yunguangtong Trading Co., Ltd.; Beijing Jinyi Changhong Technology Co., Ltd.; Beijing Yaneryouxin Technology Co., Ltd.; and Beidong Shengqi Technology Co., Ltd. (collectively, the "Beijing Shells").

8. I was not consulted about any of these transactions, did not approve them, and had no knowledge that Defendants had caused the Company to commit to these agreements. I believed that the investment was through a valid group of independent investors.

9. I subsequently discovered that the Beijing Shells shared overlapping shareholders, management, and registered addresses with one another and with Duoxi, indicating that they were coordinated shell companies under Defendants' unified control and used by them to siphon out the same funds that Duoxi had purportedly "invested."

10. Since these transactions, despite requesting them, I have not seen documentation establishing that the alleged twenty independent individual investors provided the $50 million investment as represented to me and discussed above.

11. At the time of the December 18, 2023 transaction, I was still the Chairman of the Company, and I did not participate in any meeting or board approval, nor did I sign or authorize any related documents in connection with this transaction.

12. On February 1, 2024, while I was still the Chairman of the Company, I received a formal warning email from then-CFO Francis Zhang stating that the Registration Statement, dated January 24, 2024, concerning the RMB 355 million Duoxi transaction violated PRC foreign-exchange and securities laws (including SAFE Circular No. 37) and that the proceeds had been diverted to Shenzhen Jiuzi rather than the listed entity.

13. After the purported $50 million Duoxi financing had been publicly announced, I repeatedly requested access to board meeting minutes, investor subscription documents, and bank transaction records related to the transaction. I sent written requests through the Company's internal system and by direct email. Those requests were ignored or blocked by Defendant Li's staff, who represented to me that the financial records were "under review by PRC counsel" and therefore unavailable for inspection, despite my then-as Chairman of the Board.

14. I relied on Defendant Li’s representation, however, to date, over a year after the transaction and my requests for records relating to it, I have not received any valid notices, minutes, or proxies regarding this transaction.

15. Beginning in early 2024, following the purported $50 million investment by Duoxi and my requests for information thereof, the Company continued to issue and file SEC documents in the Company’s name, falsely representing that all board and shareholder approvals had been obtained for various financings and structural changes. However, I was never a part of any board vote, despite my retention of my title as Chairman.

16. In October of 2024, I learned that Defendants had completed a transaction regarding the sale of Jiuzi (Hong Kong) Limited, a wholly owned subsidiary of the Company, for $1,000,000. At the time of this transaction, I still maintained my position as Chairman. However, at no point was I consulted about or advised of the transaction, nor did I participate in any board or shareholder vote to approve the transaction.

17. Following the sale of Jiuzi (Hong Kong) Limited, Defendants continued to make changes to the management and board of the Company. I never voted on any Company action, despite my role as Chairman. The Defendants, however, continued to file and represent

to investors that all approvals had been obtained for these structural changes, even though none of these actions were approved by me – the Chairman of the Company.

18. On August 28, 2025, Defendants filed a Form 6-K with the SEC, falsely stating that I resigned as Chairman. At no point did I attend any meetings in which a vote was held regarding my resignation, nor did I ever resign orally or in writing, as required by the Company's Articles of Association. The filing on August 28, 2025 was a complete surprise to me, as the topic of my resignation as Chairman was never discussed with me by any member of the board of the Company, nor any of the Defendants.

19. When I learned of the August 28, 2025 filing, I immediately notified Defendant Li and the Company, both verbally and through contemporaneous WeChat and email messages, that no such resignation had ever been tendered.

20. My PRC counsel, Zhejiang Cheng Ru Law Firm, issued a formal demand letter to the Company and Defendant Li, demanding immediate correction of false public statements, reinstatement of my positions, and cessation of further rights violations (the "Demand Letter").

21. As of the date of this filing, the Defendants have not responded in any way to the Demand Letter. Rather, the Defendants have continued to ignore my repeated requests and have not corrected the false Form 6-K filing with the SEC, which continues to falsely mislead shareholders and future investors.

22. As part of the Defendant's scheme to remove me from any governance role in the Company and harm my overall shareholder interest, the Defendants have made numerous offerings and stock splits that have severely diluted my percentage of ownership shares.

23. The Defendants' fraudulent acts have caused my stock ownership within the Company to be drastically diluted via stock issuances and reverse splits without proper shareholder approval.

24. When Jiuzi Holdings Inc. went public on May 18, 2021, I held approximately 21.5 million shares, representing about 59.63% of the Company's 36.0263 million issued ordinary shares, making me the controlling shareholder and enabling me to direct both management and board decisions.

25. I later discovered that on March 15, 2023, after a series of debt-to-equity conversions and the issuance of new shares to institutional creditors directed solely by the Defendants, my holdings were reduced to 11.925 million shares, or 33.10% of the Company. However, even though at the time I was then still CEO and Chairman, I was never consulted by Defendants about these conversions or issuances, nor did I approve them.

26. I also learned that on May 26, 2023, Defendants implemented a 1-for-20 reverse stock split without my knowledge or consent, reducing the Company's total shares to approximately 1.8 million and decreasing my holdings to 662,500 shares, or 25.63%. I later learned that on July 20, 2023, Defendants conducted a registered offering of 1,395,151 shares at $1.65 per share. I was not notified of this offering, did not approve it, and my ownership was diluted again to approximately 16.65%, despite my then-role as Chairman.

27. Following the Defendant's fraudulent actions to remove me from my position as Chairman, I further discovered that on June 28, 2024, Defendants had executed a second reverse stock split at a ratio of 1-for-13 without informing me or seeking my approval, notwithstanding my then role as Chairman. This reduced the Company's outstanding

shares to approximately 10.4 million and reduced my holdings to 51,000 shares, representing only 0.49%.

28. I was also never told that on October 17, 2024, Defendants approved another offering of 500,000 shares at $0.72 per share. At no point, in my role as Chairman, did I approve this offering, nor was I consulted.

29. Finally, I later learned that between September 29 and 30, 2025 (the "September Offering", Defendants caused the Company to issue 9,220,000 new shares at $0.00039 per share, purportedly raising approximately $5.53 million. I was not informed of this issuance, did not approve it, and had no prior knowledge of it.

30. The September Offering was conducted while my Demand letter, requiring corrective action, remained unanswered, allowing the Defendants continued to perpetuate their fraudulent acts, mislead investors, and dilute my shares, all while circumventing the Company's Articles of Association.

31. As a result, the Company's outstanding shares increased to 20.2314 million, and my 51,000 shares were diluted to just 0.25%. My ownership percentage therefore has been diluted from 59.6% in May of 2021 to .25% as of September 2025 due to the fraudulent actions of the Defendants.

I declare under penalty of perjury that the foregoing is true and correct.

Date: November 16, 2025

/s/ Shuibo Zhang

Signature:

Address: No. 168, Gengwen Road, Economic and Technological Development Zone, Xiaoshan

District, Hangzhou City, Zhejiang Province